Both counsel are present, and we're ready to hear your argument. It's a good morning. Nice to be back in person. Yes, it is. Good to see you. I'm Michael von Lohenfeld, Your Honors. I represent the appellant, Dr. Uzun. We're here on an appeal from summary judgment order. I know the Court's well familiar with that standard, so I won't waste your time repeating what it is. It's been clearly established in this circuit since at least 1989 that excessively and unreasonably injuring a person with handcuffs is an act of excessive force. The jury clearly could have found here that, can find here, that Dr. Uzun suffered from exactly such a violation. Judge Higgins. No, I was just adjusting. Sorry. But I'm ready with questions, but you go ahead. It seems like you've got some intelligent opiates. I feel like the, you know, we were pretty thorough on our briefs. It's a short record. They're short briefs. If you've got questions, I'd love to just jump right to them. What's the fact issue as to excessive force? If you have, and dispute any of these presumptions, but if you have first-hand complaints, mother-child about violence to children, plus you've got a video and your brief confirms that he twisted slightly as he's being arrested, perhaps to get back into his house, and then the video likewise confirms that the minute the police knew it was constricting him, within 10 seconds they loosen it, where would a jury see excessive force if that's a correct description? I think what's important, Your Honor, is to distinguish between two different ways in which the force can be excessive. There's injury and there's pain. Those are different things. The pain cases are very clear. The pain, okay, I'm going to interrupt you because I know you know this area well, and I think you're exactly right, but it seems to me the pain cases, which I'll call notice cases, somehow it comes to the attention of the police that the constriction exists. I couldn't find an injury, subsequent injury only, other than a dictum, that actually created a fact issue. So, in other words, the Ninth Circuit has several times said, you know, they're ignoring it, he's crying out, it's visible, and then disjunctively one or two cases, the ones you cited, say, or pain, I didn't find any case that turned on that distinction. So I'm going to point to two cases, correct? The first case in this chain, Hansen v. Black, there is no discussion in that case of a complaint at all. That's just about grabbing her tightly and squeezing the handcuffs and causing bruises. There's no issue in Hansen about notice or sustained pain or failure to loosen. That doesn't come up at all. It's just straight up, they hurt her with the handcuffs. Handcuffs aren't to restrain. They're not even supposed to hurt her. But the hurt, did they hear? I thought she cried out in that case. That's not discussed in the case itself. They don't discuss that as a relevant element. I would also point, I feel as if I'm being very loud. Yeah, no, it's funny how it is working like that, but it doesn't bother me. Go ahead. Okay. The other case I point to, Your Honor, is the Bill case from the Fifth Circuit, which is very close. Oh, it's the Black Circuit. That's our case. Well, Your Honor, the Fifth Circuit says there's no qualified immunity. I feel pretty good here. I don't mean to take. But don't these cases boil down to the officers, how they react when they realize this is the notice, right? No. If they react promptly, I don't want to take all your time, but if they react promptly, what's your best case? The pain case is related to that, Your Honor. My best case, again, would be Hansen and DeVille, where there's no issue. The issue is what has the injury caused. The issue in DeVille was there was a dispute of factors of whether they double locked the cuffs. And remember, what's happening here, it's not just the twisting of his arm when they first grab him. They take him to the car, and they put him in the car against his will with his weight pressed against the cuffs, and the cuffs aren't double locked, so when his weight hits the cuffs. I understand. Okay. These officers do that all the time, but they have to be on notice of, what are they on notice of? They're on notice that they need to double lock the cuffs so that they don't, you know, cripple his wrist when they stick him in the car. And so is that the excessive force, the fact that he did not double lock the cuffs? I think it's a chain of events starting with a vehicle itself, right? Well, they don't put him in the car. No, you've got to not double lock the cuffs. Then you've got to apply something to the cuffs. Because, sure, if the suspect is just standing there, and the cuffs aren't double locked, but nothing's pressing against them, nothing's going to happen. But they know they're putting him in the car. They put him in the car with his hands behind him and weighing his weight against the cuffs. But you therefore agree that when we're looking at this video, as the district court did focus, before he gets into the car, he's talking about he's very calm. He's talking about his daughter, his lawyer, his own meds, his depression. No indication they would even have known. So it would seem to me at that point all it could be would be negligence. No excessive force until those 10 or 11 seconds where he yelps and then they take him out. So let me break that down a couple ways. In this video, I think when they first grab him, there's a dispute of fact as to how hard they grabbed him. The video doesn't show it. He testifies to feeling a level of pain at that point. Now a jury may say that's not enough pain to count, but that's a jury question. But the serious injury here happens. The serious injury happens when they drop him in the car and with his weight against the non-double locked cuffs. And at that point it doesn't matter, you know, if they shoot him accidentally. It doesn't matter how they wrap. The damage is done. Yes, they took him out and adjusted it. We're not, it's not a pain case. We're not saying that excessive force was ignoring. Why, because there's, and you have to back up a little bit, if you think the damage is already done, tell me what's the point at which they should just be on notice that they were using excessive force, please, when they didn't double lock at the very beginning? So, Your Honor, first off, there's no case law that says they have to be on notice that they have used excessive force. Okay? The pain cases say that you can't use handcuffs in a way that causes pain and ignore the pain. We're not talking about that. We're talking about serious, lifelong, nerve and tendon damage to his wrist. It's medically documented. So tell me, what's the rule of law you're relying upon? They're reasonable. And you keep slipping away from it, so. I don't believe that I am, Your Honor. The reasonable officer would double lock the cuffs before putting them in a position where they could tighten. That's what they're trained to do. That's their policy. That's their training. That's only if it's feasible. Your Honor, the testimony is it was feasible. And you can see on the video that it's feasible. Nothing in the world stops them in the law. It can't be a constitutional right. You don't have a constitutional right to have your handcuffs double locked. You have a constitutional right not to have your nerves permanently damaged. You have a constitutional right not to have your tendons permanently damaged. The right is against the injury. What happens if, like, so say the officer and your client were just standing there, and the officer accidentally trips and then causes your client injury? Is that excessive force? Well, then I think you look, would a reasonable officer have taken care? And probably not, because people trip. But that's not what happened here. You just said the right is against the injury. The right is against excessive force. And your position is that this was excessive force, and that this is, I think, what? Was it not double locking? Use of handcuffs and putting them in the car is a use of force, okay?  Not double locking the handcuffs. And checking to make sure they were okay before they put him in the car caused an injury. A jury could find that was unreasonable. Now, a jury might say. That slips back to negligence. Just if you could just tell me, what's the constitutionally excessive force? And, you know, we all know the timeline. The injury. What does it happen in your sequence, sir? As soon as the handcuffs injure his nerves, which appears to be in the car. Is there any allegation that was intentional? No, but that's not under the subjective standard. There's no subjective standard, right? It's an objective standard. So even if it was intentional, it doesn't matter. That's why I take some cripple with the use of the word negligence. Because that would look at the subjective standard. Fair point. But you see our problem is we're trying to figure out when it becomes constitutionally excessive. And so. It's constitutionally excessive when they do something to him that unreasonably injures his wrist. There's no melee here. They had all the time in the world to do this right, and they just didn't. And whether that's incompetence or intentional, it doesn't matter constitutionally. He has a right not to have his hand permanently damaged. He has a right to not be subjected to excessive force. Yes. But reasonable force. And that's why we're trying to give you that there's a distinction there. Sometimes people receive very serious injuries, but the force applied was not necessarily excessive. And that's why we're torturing you here. Right. But look at what we know. We know that excessively tight hand cuffing, that the tightness can be a constitutional injury. We know that the reason. We know that the. If I could just. I want to do a whole chain of events. I don't want to interrupt you, Your Honor, but I want to make sure. Great. I'll be quick. The chain is important. We know that being too tight, either causing pain or injuries, can be constitutionally excessive. We know that the reason you double lock the cuffs, and it's not just policy. They all testified to this, that they understood this. You double lock the cuffs because if you don't, they can get too tight, particularly if you're going to lean someone back against them in a car. Right. So they're training. It's not just abstract, rather, kindness of their hearts. They're trained this way so they don't injure people. These officers didn't bother to do that. That's constitutionally excessive. You're making a very coherent and forceful argument, so I'm just pressing you with the question. If we were to affirm, which would be more wrong in your mind, to affirm under Graham no issue of fact or to simply say no clearly established law in the context of double locking? Which is more wrong? I think that under Graham is more wrong, and I would note that if you find qualified immunity, he still has his state law claims, none of which are subject to qualified immunity. There is no California immunity for excessive force. So certainly if your honors believe that there's some qualified immunity issue with the mechanism, and I would note that in none of the cases constitutionally clearly established law you're relying on is that everyone agrees you have a constitutional right not to have it over-constricted. Correct. But my read of the majority of the case law, especially Ninth Circuit, put aside fifth, often is that they're all failure to respond cases. I don't think you'd characterize Hanson that way. Okay. So I guess if you take a close look at that. Any other case from any circuit other than Hanson putting aside the fifth in DeVille? A circuit court case, now, Hanson and DeVille are the only ones I found where the double locking was, well, Hanson's not a double locking case, but where the injury is specifically raised, and there's no discussion. There are district court cases. We cite some of them. DeVille, let's go back to your argument. That's fine. Thank you. Actually, I'd like to talk. I want to talk about your state claims. Okay. So I have a couple of questions, and it looks like Judge Fubike does as well. On your state claims, the district court kind of refers to a couple of different statutory immunities, not all of them that are available, I think. Do you want to respond to those first? Sure. Well, I think actually circuit law is very clear on that. There is a lingering confusion in the district courts in this state about this court's law on 821.6. The Ninth Circuit has clearly held that 821.6 does not apply outside of malicious prosecution. That's sharp versus orange in some cases beyond that. They've held in cases that the panel is bound by that, even though some state courts disagree. I grant you that. Is it your read that the district court relied on 821.6? Well, I think the district court cites 821.6 in its order. Can I ask you a different question, counsel? Is it your read that he relies on it? I think the district court did not focus on the fact that the qualified immunity issue was different than state law immunity and sort of glossed over that distinction in fairness. But we're here on de novo review, so what the district court was thinking isn't really before this court. It's the result the district court reached that's before the court. It's a fair point. And I believe circuit and California law are both clear that if there is constitutionally excessive force, there's never immunity under California law. What about state law? You just bumped into my other question, and I promise I'll look at it. If we don't think there's constitutionally excessive force, just for a minute, if we could look at the state claims in isolation, and I want you to assume that we haven't decided there's constitutionally excessive force. Imagine that on the federal claim we just rely on Prompt 2. So then we get to the state tort. I'm trying to figure out if there's a difference under California law, a delta between what it takes to commit the tort and constitutionally excessive force. And I've looked at a lot of California law, and it doesn't quite get there by my read. Do you want to speak to that? I think there is some difference. On the negligence claim, on the battery claim, no, there's no difference. The battery claim, it's our understanding, is coherent with the Fourth Amendment claim, but without immunity. If excessive and unreasonable, you think those mean the same thing? You can't commit the battery without exerting constitutionally excessive force. Is that your position? Right. I think that the Munoz v. City case, which we cite in our brief, clearly that's a California case, says that. I think the holding of that case, unfortunately, is that those claims are consonant with each other. The negligence is different, though negligence is broader. And I think we've got a strong negligence case here as well. Even if you find somehow this is not constitutionally excessive, there was a clear duty to double up the handcuffs. I don't think there's any reasonable argument that it wasn't feasible. One of the officers actually testified it was feasible. I've seen no defense offered from my friends on the other side as to why they couldn't have done this right. Well, the officer who applied the handcuffs did testify about that in his deposition. I didn't see it just for the benefit of both counsels' arguments. It seems like it boiled down to, you know, he wasn't going to be in the handcuffs very long. We were going to be transporting him, and I didn't see a real reason for not double locking. Right. And I think a jury could find that that's negligent and that that injured my client. Right. I also think that that violates the Constitution. Those are two different animals. Those are two different animals. I certainly think our negligence claim is easier because we don't have that extra gram hurdle. But I think if you apply the gram factors, you get back to the same place. There's no melee. My client's not resisting. We can make arguments about whether, you know, initially he was, quote, unquote, resisting. And I'd ask you to, you know, look at that video and what's said to him. Well, he's not that. He's not. Oh, I'm sure you have. And he's not told, you are under arrest. Put your hands behind your back. He's told, please step out so I can pat you down for weapons. And then they don't do that, and he gets confused. I would also remind the court my client's on Xanax at this point and just got woken up. And so if his reaction seems muted compared to the pain he describes, perhaps the jury could find that the medication explains the, you know, perceived dissonance between how loud he is and what he says he was feeling. I just want to check to see if we have any, because you're out of time. Let me just check to see if you have other questions. Yeah, just one other question. What about immunity under 820.2? The 820.2 immunity applies to policy decisions. The court actually, I think, addresses that in Sharpe as well. Yeah. And there's that older case, that's Blankenhorn, which suggests that it does apply to discretionary decisions made during arrest. Well, I think Sharpe is the current law of the circuit and is binding on this panel, and I think it's unequivocal that it's Sharpe's fault to expressly overrule Blankenhorn. Sharpe did not expressly overrule Blankenhorn, but as I understand the horizontal stare decisis rule, you look to your, you know, sort of the broadest most recent statement that the court makes. I also think that the state law cases are not great for them to cite on that. I will admit this is not an issue that the district court, you know, has addressed. I think, again, I think you should reverse entirely on these claims. If you were to remand with instructions to look at particular issues under state law, you know, that would be better than affirming. Okay. And so if we were to find that it was not excessive for us, you would agree, then we can affirm on battery, but we should not affirm on negligence. That's correct, Your Honor. Okay. Thank you. Thank you, counsel. When you come back, I'll put you into some of the boxes for planning purposes. Thank you very much. Sure. We took up an awful lot of your time. We'll hear from our opposing counsel, please. Good morning, Your Honor. May it please the court. Scott Davenport on behalf of the Appellate City of Santa Monica. I had a lot of prepared comments, but this is a hot bench. So let's get right to it. Well, if you didn't have the video, would you agree that summary judgment would have been inappropriate? Fifteen years ago before Scott versus Harris, yes. Yes. Well, so I'm assuming there's no video showing just 11 seconds and the yell. So, in other words, he says that it was over-constricted, and the testimony was that that was in violation of the department policy. You mean at the time that he was put into the car? Because I think that that's where we limited the discussion to today, was that that's when the constitutional injury occurred. You know, the thing about being put into the car, if you go back and you look at the video with timestamp 1140, he got into the car in his own steam. This wasn't something where he was let in. I guess is there no issue of fact as to Graham if you have the following circumstances? Minimal resistance upon arrest. Violation of a department rule because it was feasible to double lock. Permanent injury resulting from the failure to double lock. Your position is? There's still no issue of fact. Still no issue of fact. Is that the best case you have for that? Well, I think that this thing, first of all, let me back up a little bit. I think there's a distinction here that's being made, is that the argument of the appellant in this case is that, well, I allegedly suffered injuries, which we're accepting for the purpose of this motion as we must. I allegedly suffered injuries, so by definition, that's excessive force. And that's not the right inquiry because the focus should be on the actions of the officer, not on whether or not he did it. I don't know if you can accept that point. It's very well taken, and I probably was the one who most belabored it earlier. But I didn't see anything anywhere to explain why these handcuffs weren't double locked. I think it's undisputed. It's a violation of policy. It's corporate policy to double lock them. Is that right? It is. That is policy, yes. And then the next question is, do we ever really get an explanation for why? People make mistakes. I'm not trying to beat up on anybody, but it is our job to look to see what is the outcome. All I can tell you, Your Honor, is that this is what happened. I think there was an initial struggle at the door where there was some initial resistance. They got the cuffs on them, and then things calmed down. But I don't see anything, just to give you the benefit, we watched the video, and I don't see any reason to think that it was not feasible to double lock those cuffs. So just so you know, I'm proceeding from that. I understand. Okay. So what do we do about a violation of department policy in terms of, you know, I'm just on the constitutional claim now. I think the violation of a policy doesn't give rise to a constitutional claim. In any case, all that says that it does. Not as I stand here before you today, but I can. So when you flip then to the state tort claims, I've got this problem with there's the battery claim and the negligence claim. And I would just like to hear you speak to, in order to commit the state battery, the tort, does the force have to rise to the level of a constitutional violation? I think that they're coextensive. And I think that counsel and Judge Clemente agree with that, that they are coextensive. I think there's a little difference with. Does that make sense to you, that you would have to commit constitutionally excessive force in order to commit a battery in California? Unreasonable, yeah, unreasonable force under the totality circumstances, yes. You realize that they don't quite, the language in the case law doesn't quite mirror. But anyway, it sounds like you're both conceding that those are coextensive. They seem to be. But not for the negligence claim. I think that's correct. Do you read the district court to have relied on statutory immunities, any of them? You know, by reading the, I think that there was a certain amount of waiver that went on here. There were issues that weren't opposed in the motion for summary judgment. They're being raised for the first time now. As I went back and. But what issues are you talking about? Well, in the briefing, the underlying briefing, we raised the issue of different statutory immunities. Those were not addressed at all by opposing counsel. I was asking whether you think the district court relied on statutory immunity, or did the district court just rely on it to be that as a matter of law, having looked at the video, no reasonable juror could decide that that force was excessive. I think it's unclear. I think it's a little bit of both. But that part of the, you know, a lot of times when we get these kind of cases, what happens is the district court will grant summary judgment for whatever reason, either on the merits or based on qualified immunity, and then they'll remand state court action. So this one didn't happen. Right, but not this one. Not this one. So what's your best argument that the negligence claim doesn't go back then? Because the negligence, you know, here's my read so you can respond. The department policy says double lock. There wasn't a double lock. I can't see anything from the evidence that shows. I think a juror would see the same evidence. You know, there was a reason it was not feasible, I should say, to not double lock. And the negligence claim doesn't go back. Yeah, I'm still not sure that there is a, it might have been a policy to double lock. I don't know if there was a duty or that there was causation in this case when they put him into the car. This is something he did under his own. Wait a minute. What do you mean there wouldn't have been causation? The problem I thought was that at least a juror could find from this evidence is that the handcuffs weren't double locked and there wasn't a problem. He doesn't seem to be in distress until they put him in the back of the car, and then his weight makes them plop down harder. So why is that not a viable negligence claim, at least at this stage of the proceedings? Well, I guess it's with what is the causation of the injury is the fact that they weren't double locked and the fact that he's leaning back on them. You know, I don't know. It's a closer question than negligence is. Which is why I started with whether there's a state statutory immunity claim, and do you want to take another run at one of those? And those are the ones that I was saying were waived because they were not addressed at the district court level. I'm sorry. Why were they waived? The district court found immunity on one count. They were not briefed. They were not opposed in the summary judgment motion. Mr. Bumate just asked you a question that's premised upon the district court relying on, and I thought I asked you whether he relied on. And I just wanted to be clear. Do you mean the district court as relying on immunity? I think there's both there, yes. He says that it doesn't rise and they drop in mentions of immunity. Wait, wait, wait. So, yes, you think he ruled in part on immunity? Mm-hmm. So, you're saying the district court raised immunity sui sponte? No, I'm saying we briefed it. The other side did not oppose on those grounds. Oh, so that's why. I don't think that's what we're talking about. It's not being raised for the first time in a field. Never heard that before. So, what is the meaning? Well, don't you have some immunity arguments that were briefed and not ruled on by the district court? Yes. Yes. Okay. Yeah, I have two questions. One is sort of backward-looking. The precedent relied on by opposing counsel. And the second would be a rule of law question going forward if we were to rule for you. So, the backward-looking question is, could you distinguish the reply brief cases cited by opposing counsel that do seem to speak disjunctively? In other words, excessive force can be made out, would be debatable, either when cries ignored or injury occurs. And then specifically focus on the case that he highlighted today, Hanson v. Black. Absolutely. That's my first question. Just because we're on a hot bench, I want to give it a second and see if you can come back to it. If you were to prevail, you don't dispute that clearly established law is that police can't over-constrict. But are you arguing that we should say, well, what hasn't been clearly established is when the police failed to lock so a handcuff that ratchets keeps ratcheting tighter? Is that what the rule of law would be, according to you, that in the Ninth Circuit there's no clearly established law? That makes me very uncomfortable. And even if it were to protect your clients here, I'd be inclined to say, well, hereafter, clearly established law is that police can't just have an endlessly ratcheting. So, those are my two questions. There's the law and the rule of law you proposed. I'll take the first one first. Leave me aside to Bill, because I'm not going to get into an argument about Fifth Circuit law with you. So, he relied on Hanson. Hanson v. Black is a very different kind of case. That one, there was a dispute about facts, what happened. They were characterized as rough and abusive conduct. There were bruises, and there was immediate treatment as soon as they were booked. Immediate treatment, that's not what happened here. They consistently asked him, are you okay? He said he was okay. Once they loosened up, they took him back to the jail, and they booked him in the second video we posted. And he said he was fine there. So, I don't think Hanson gives any notice whatsoever. I think it's a reply brief case where it does speak disjunctively of either. Yeah, I can go through all of them if you'd like. Well, just pick the one that's most difficult for you. None of them are difficult for me. So, are you saying that that language about permanent injury is just dictated, didn't control any particular case? Because my colleagues probably have questions to the second question. If we do decide there's some qualified immunity, if we reach that issue, I assume you aren't disputing the clearly established law says they can't over-constrict. So, how would you write the rule of law that we would then say, well, but the law doesn't clearly establish, and then finish the sentence? Well, you know, my take on what the clearly established law is, is that if it does severely constrict it, they have to loosen it. And if you look at some of the other cases, that's what we're talking about. In Palmer, there was a refusal to loosen. In Hanson, there was, you know, this immediate treatment wall, there was a refusal to loosen for 20 minutes. Lalonde, they had him cuffed for 30 minutes. So, that's again saying what all the past cases say. Right. But would you have any difficulty with us saying, well, hereafter the law in the Ninth Circuit is police officers cannot fail to lock? Double lock. Double lock. Well, just stop the ratcheting tension. I understand. I think that that is one way for this court to rule. Okay. I'm a little surprised you'd say that. Well, it's not. In today, police could be negligent. Well, here's the thing. I don't think as you watch that video, we get to qualified immunity, because I think the force was reasonable and correct. And I think that that's the way to suppose in this case. The double locking mechanism, it's clear. There is no case law with a requisite level of specificity that talks about double locking. Qualified immunity, it's an easy way to go. But I think that the – Easy unless you're here stating that we should now state for the future. You know, it's not clearly established now whether or not you determine that it is, again, under these facts, it's not a constitutional violation. So I'm going to answer that question. Thanks. Just real quickly, do you agree with counsel that we don't follow Blankenhorn in finding that 820.2 only applies to policy decisions? I've got this mixed up. 820.2 is the policy, 815.6 is the – Let's just cross it. Right. Blankenhorn says that it does apply to discretionary decisions made during arrest, while Sharp says no, it only applies to, I think, policy decisions of the – The case law in this area is a little bit muddled. It's not a model of clarity. I do think that, as I mentioned here, there was a failure to oppose this at the district court level, which would bar review of this court for the first time. You seem reluctant to accept that, but that has been our position throughout the court. I would say with our review of immunity, we move for some re-judgment on the grant of immunity in part. They did not oppose on that grant. They're opposing it for the first time now on appeal, and that's not proper. Do you think you're there? No. Thank you. Thank you for your time. Sure. Thank you. Counsel, you've got two minutes. Okay. I'm going to try this one more time. You look at Palmer. Palmer says, quote, Palmer claims that Sanderson fastened Palmer's handcuffs so tightly around his wrist that they caused Palmer pain and left bruises that left for several weeks, period. Sanderson has presented no evidence that would justify handcuffing Palmer so tightly that he suffered pain or bruises, comma, or to justify his refusal to let go. I was going to say or, but that case does have repeated requests to the police that were ignored. Yes, it does, and those are separate violations. Even if there was no injury, ignoring the repeated request would be a violation. You don't need both. You need one or the other unless this court believes the pain is not enough. If pain is enough, if pain and refusal to loosen is enough, then why do you need injury at all? They're separate. They're two different things, injuring someone and simply causing pain. Causing pain is more like sort of an unnecessary torture problem. Injuring is different. If you look at the way Palmer describes Hanson, it cites Hanson, the rule in Hanson is, quote, unreasonably injuring a person's wrist while applying handcuffs constitutes use of excessive force. That's how Palmer characterizes the rule in Hanson, a case where there was no complaint and failure to respond at issue in the decision. It is true in Hanson there was the accusation that the way he was put on was abusive and rough, and it seems like there was a factual dispute about what actually happened there. Right. I don't think we'd say there's no factual dispute about how he was put on. Why there's no factual dispute? Because they admit they incompetently failed to double lock the handcuffs, and if you look at that policy, I agree that it's a general matter violation of the government policy. It's not a constitutional violation. But this is a policy directed at not causing injury. This policy implements the constitutional command. How do you get under Hanson if there's no accusation that it was abusive? I think it's abusive to not double lock the handcuffs and then put weight against them. That's abusive because, as the policy says, and as the police expert that we provided says, and as the police officers testified, the sergeants, not double locking it allows the handcuffs to ratchet up, causing the unconstitutional constriction, which permanently injured my client. So we'd ask the court to reverse. Thank you very much. We'll take the case under advisement.
judges: Higginson, CHRISTEN, BUMATAY